UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KEIRTON USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> U.S. CUSTOMS AND BORDER PROTECTION, <br><br> Defendant. | Case No. C20-1734-RSM <br><br> ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER |

## I.     INTRODUCTION

This matter comes before the Court on Plaintiff Keirton USA, Inc. ("Keirton")'s Motion for a Temporary Restraining Order ("TRO") against Defendant U.S. Customs and Border Protection ("CBP"). Dkt. #2. As of the date of this Order, it appears that Defendant CBP has not been served with notice of the instant action, making consideration of Plaintiff's motion *ex parte*. For the reasons set forth below, the Court DENIES Keirton's Motion.

## II.     BACKGROUND

Keirton is a Washington company that manufacturers and imports parts, components, and finished agricultural equipment ("Goods") from Canada, China, Taiwan and Japan to its location

ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER - 1

in Ferndale, Washington. Dkt. #2 at 3. Goods imported by Keirton include components for the "Twister Trimmer," which is a machine that separates branches from leaves and crop heads and vacuums the waste of agricultural processing. Dkt. #4 at ¶ 3. The product lines produced by Keirton contain at least one imported part. *Id.* at ¶ 11. To ensure that Goods will only be used for lawful purposes, Keirton enters agreements with end users requiring that the users not sell Keirton's products to "anyone who may seem to be engaged in or intend to engage in illegal activity" and provides that Keirton "will not put Goods in any materials that would be construed—either by content or placement—as soliciting the business of persons engaged in or intending to engage in illegal activity." *Id.* at ¶ 6 (citing Dkt. #4-1)).

On October 7, October 15, and November 11, 2020, CBP agents seized Keirton's Goods on the basis they were being introduced into the United States "contrary to law." Dkt. #2 at 4. Pursuant to the seizure, CBP issued three Notices of Seizure dated October 26, 2020 and an additional Notice of Seizure dated November 17, 2020. *See* Dkt. #4-3 at 1-29. Keirton contends that the Goods seized in this case are either intended for lawful use or do not yet have an end user, and therefore are not being imported for an unlawful purpose. Dkt. #4 at ¶ 9. Keirton further claims that without the ability to import Goods, it "will soon have to lay off all of its employees and close the business permanently." *Id.* at ¶ 11. Keirton estimates that based on the company's current inventory and demand, it can remain open no later than December 31, 2020, but "there is a chance the business could close within the next 15 days." Dkt. #3 at ¶ 6.

On November 23, 2020, Keirton filed the instant TRO seeking an order compelling CBP to return to Keirton the Goods that were formally seized and/or detained by CBP, to enjoin CBP from detaining and seizing Keirton's imported Goods until a hearing on a preliminary injunction

ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER - 2

is held, and to enjoin CBP from initiating administrative or civil forfeiture proceedings against Keirton. Dkt. #2 at 14-15.

### III. DISCUSSION

#### A. Legal Standard

Motions for temporary restraining orders without notice to and an opportunity to be heard by the adverse party are disfavored and will rarely be granted. Local Civil Rule ("LCR") 65(b)(1). Federal Rule of Civil Procedure 65(b) states that the court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition and the movant certifies in writing any efforts made to give notice and the reasons why it should not be required. Unless these requirements are satisfied, the moving party must serve all motion papers on the opposing party before or contemporaneously with the filing of the motion and include a certificate of service with the motion. LCR 65(b)(1).

As an initial matter, it appears that Defendant CBP has not been properly served pursuant to Fed. R. Civ. P. 4(a)(1). Dkt. #5. However, Plaintiff does not appear to be seeking relief without notice. It recently filed a praecipe to issue summons in response to the notice of filing deficiency, indicating it is attempting to serve Defendant. *See* Dkt. #6. Given the analysis below, the Court will not deny this Motion for failure to provide notice.

Typically, to succeed on a motion for temporary restraining order, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that a balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def.*

*Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). The Ninth Circuit employs a "sliding scale" approach, according to which these elements are balanced, "so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). However, the moving party must still make at least some showing that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id*. at 1135. Furthermore, courts impose a heightened burden where the moving party, as here, "asks the court to disturb the status quo rather than maintain it." *Cent. Freight Lines, Inc. v. Amazon Fulfillment Servs., Inc.*, No. C17-0814JLR, 2017 WL 2954426, at *2 (W.D. Wash. July 10, 2017). In such cases, courts must deny such relief "unless the facts and law clearly favor the moving party." *Id.* (citing *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994)).

     The Court has reviewed Plaintiff's Motion and finds it has failed to demonstrate a likelihood of irreparable harm to Plaintiff in the absence of emergency relief. "The threat of being driven out of business" may establish irreparable injury. *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985). However, courts recognize that "declarations by the plaintiff-entity's own management, standing alone, are usually not enough to show that the plaintiff's ongoing business concern would be threatened without injunctive relief." *Nulife Ventures, Inc. v. Avacen, Inc.*, No. 20-CV-2019-BAS-KSC, 2020 WL 6150440, at *2 (S.D. Cal. Oct. 20, 2020); *see also Am. Passage Media Corp.*, 750 F.2d at 1474 (Statement of actual revenue losses in foregoing year and predicted losses in following year by company's CEO was insufficient, standing alone, to show plaintiff was threatened by risk of being driven out of business).

ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER - 4

Here, Plaintiff relies on the declarations of Keirton's CEO, Jay Evans, and Keirton's Director of Manufacturing, Jason Fluckiger. *See* Dkts. ##3, 4. Both of these declarations offer conclusory assertions that Keirton will close by December 31, 2020, and possibly sooner, unless Keirton is permitted to import the Goods. *See* Dkt. #3 at ¶ 6 ("[T]here is a chance the business could close within the next 15 days."); Dkt. #4 at ¶ 11 ("Without the ability to import Goods, Keirton will soon have to lay off all of its employees and close the business permanently."). Without providing any basis for Mr. Evans' or Mr. Fluckiger's conclusions, these declarations are insufficient, on their own, to show that the demise of Keirton's business is "imminent" unless emergency relief is granted. *See Nulife Ventures, Inc.*, 2020 WL 6150440, at *2; *cf. hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 993 (9th Cir. 2019) (Finding irreparable harm based on threat to business' survival where "[t]he record provides ample support for that finding.").

Keirton also argues that it faces irreparable harm in the form of damage to its goodwill with business contacts and reputation in the business community. Dkt. #2 at 13. Again, however, Keirton makes no effort to substantiate these conclusory assertions. *Cf. Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*, 601 F. App'x 469, 474 (9th Cir. 2015) (unpublished) (Finding declarations reporting "numerous and persistent complaints from would-be customers" and "emails and social media posts from consumers" as material substantiating irreparable harm based on threats to plaintiff's reputation and goodwill). Indeed, the Fluckiger declaration states that an unspecified number of Goods "do not yet have an end user," Dkt. #4 at ¶ 9, making it unclear the extent to which Keirton would suffer damaged goodwill or reputation from unfulfilled orders.

For these reasons, the Court concludes that Keirton has failed to satisfy the heightened burden necessary to warrant mandatory preliminary injunctive relief. *See Stanley*, 13 F.3d at

ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER - 5

1320.  Because Keirton fails to show likely irreparable harm, the Court need not address the remaining elements to obtain preliminary injunctive relief.  *See Winter*, 555 U.S. at 20; *Cottrell*, 632 F.3d at 1134–35.  Accordingly, the Court DENIES Keirton's motion.

### IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Keirton's TRO Motion, Dkt. #2.

DATED this 24th day of November, 2020.

*[signature]*

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE